## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT J. CONANT, | : | Case No. 2:23-cv-01148 |
| | : | |
| Plaintiff, | : | District Judge Douglas R. Cole |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| NOBLE CORRECTIONAL | : | |
| INSTITUTION, *et al*., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff Robert Conant, a former Ohio inmate who is proceeding without the assistance of counsel, filed this civil rights action under 42 U.S.C. § 1983 against the Noble Correctional Institution ("NCI"), Corrections Officers David Freeman and Shayna Bishop, and several John Doe Defendants. After screening Plaintiff's Complaint and Amended Complaint, this Court allowed him to proceed with his Eighth Amendment claims against Freeman and Bishop based on their alleged use of excessive force. (Doc. Nos. 7, 11, 20 & 26.) The Court dismissed Plaintiff's remaining claims. (*Id*.)

This matter has been referred to the undersigned Magistrate Judge to issue a Report and Recommendation on Defendants' Motion for Summary Judgment (Doc. No. 39.) Plaintiff did not file a response. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** in its entirety and that Plaintiff's claims be **DISMISSED WITH PREJUDICE.**

## I.    STATEMENT OF FACTS

Defendants supported their Motion for Summary Judgment with approximately fifty pages of documents that were not authenticated by an affidavit or declaration. (Doc. Nos. 39-1, 39-2 & 39-3.) When the evidence that a party relies upon to support or oppose a motion for summary judgment is in a form that is inadmissible, the opposing party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Then "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56 Committee Note to 2010 Amendments. Here, because Plaintiff did not object to the admissibility of Defendants' exhibits, the undersigned may consider this evidence when ruling on the Motion.[1]

This lawsuit arises from an incident that occurred during the early morning hours of March 31, 2021. Shortly after the incident, Plaintiff described it as follows:

> I told Officer I needed to use bathroom and he told me to get to the wall or he would slam my head against the wall. I said I didn't do anything so he body slammed me and [illegible] me also dislocated my shoulder and hit my head on the wall.

(Inmate Use of Force Statement, PageID# 228.) When Plaintiff was questioned about the incident approximately one week later, he provided this description:

> [Correctional Officer] Freeman came up to me because I was out of place. I was being loud, so he approached me. He told me to go to my house. I

---

[1] Of course, the *content* of the evidence must also be admissible. *See Cantrell v. Scioto Cty.*, No. 1:22-cv-739, 2025 WL 2780816, 2025 U.S. Dist. LEXIS 193208, at *25-30 (S.D. Ohio Sept. 30, 2025) (Cole, D.J.) (sustaining objections to inadmissible hearsay statements in a prison official's investigative report when ruling on a motion for summary judgment). But because Plaintiff did not object to the admissibility of Defendants' exhibits (whether based on form or content), he has waived any such objections.

2

asked to go to the restroom, and he said no. He placed me on the wall. As he placed me on the wall, I put my hands on the wall. As I did that he said if I move, he will smash my face in the wall. When he said this, I came off the wall and that is when he threw me to the ground. Once I hit the ground CO Freeman put his knee on me and then CO Bishop sprayed me. No one ever gave me any directives. And that was it. Then they cuffed me.

(Inmate Conant Statement, Doc. No. 39-1, PageID# 218.) Plaintiff admitted that he disobeyed Freeman's order not to go to the bathroom, but said "[o]ther than that, I did as I was told." (*Id*.) He stated that he did not lose consciousness. (*Id*. at PageID# 219.)

Promptly after the incident, Plaintiff was taken to NCI's medical facility and told the nurse who examined him that "[m]y shoulder hurts a little more than usual." (Doc. No. 39-1, PageID# 229.) The nurse noted no signs or symptoms of distress; no discoloration, deformity or swelling of Plaintiff's left shoulder; and no injuries. (*Id*.)

Later that day, Bishop charged Plaintiff with violating Conduct Rules 21 and 35, which she described as "disobedience of a direct order; being out of place." (Conduct Report, Doc. No. 39-1, PageID# 227.) She described the incident as follows:

[W]hile dealing with other inmates on first street Inmate Conant … was yelling over the wall making comments from second street. Officer Freeman went to second street and approached inmate Conant, and asked inmate Conant to show him where he lived. Inmate Conant disobeyed a direct order and started walking towards the inmate bathroom. Officer Freeman gave a verbal command to stop, and cuff up. Inmate Conant refused a verbal command, so Officer Freeman attempted to escort Inmate Conant out to the officers desk. Inmate Conant resisted, so Officer Freeman guided Inmate Conant to the wall, to gain control of him. At that time Inmate Conant pushed off the wall. I Officer Bishop deployed OC to the facial area of Inmate Conant, and Officer Freeman placed Inmate Conant on the ground. At which time, Inmate Conant finally complied with the verbal command to cuff up.

(*Id*.)

3

That same day, the NCI Deputy Warden submitted a Review of Use of Force document to the NCI Warden. (Doc. No. 39-1, PageID# 224.) The Deputy Warden summarized the Conduct Report and recommended that the matter be referred to the Use of Force Committee. (*Id.*) Warden Forshey concurred with the recommendation. (*Id.*)

On April 5, 2021, the NCI Rules Infraction Board ("RIB") found Plaintiff guilty of violating Rules 20, 21 and 35. The RIB explained its decision as follows:

> The board believes inmate Conant was out of place on the 2nd street and was given several direct orders to go out front and cuff up. Inmate Conant refused and came off the wall in an aggressive manner at which time he was taken to the ground and O/C deployed.

(Doc. No. 39-2, PageID# 245.) The RIB Officer then imposed a punishment of nine days in restrictive housing. (*Id.*) The Warden affirmed the decision. (*Id.* at PageID# 246.)

Later that day, Plaintiff submitted a "kite" regarding Defendants' use of force during the March 31, 2021 incident. (Doc. No. 39-1, PageID# 231.) He stated:

> I am in the hole for the CO body slamming me and macing me while I was on the ground after he told me he was going to slam my face into the wall. I have 4 bruises on my wrist where he cuffed me so hard and also a broken rib so [I] would like to get the CO for excessive use of force. [T]hank you and please take pictures of the bruises before they disappear.

(*Id.* (cleaned up).)

Two days later, a prison official closed the kite and wrote: "The Use of Force that you were involved in is being reviewed by a Use of Force committee for resolution." (Doc. No. 39-1, PageID# 231.) That same day, Plaintiff was seen by a different nurse at the medical facility. (*Id.* at PageID# 233.) Plaintiff stated: "I got bruises all over me from where he pushed me around and I think he broke a rib on my right side." (*Id.*) The nurse

observed that Plaintiff was not in distress, had no labored respirations, had no deformity or bruising to his chest or torso, and had "little to no" bruises on his wrists. (*Id*.)

NCI Unit Manager Dale Neff investigated the incident by reviewing the video footage,[2] pictures, and medical reports, and by interviewing Plaintiff, Bishop, Freeman, and three witnesses. (*See* Doc. No. 39-1, PageID# 212-223.) Neff then provided a written report to Warden Forshey. (*Id*. at PageID# 202-211.) After summarizing the evidence, Neff identified these inconsistencies and consistencies:

> Inconsistencies: Both Officer Freeman and Officer Bishop originally authored that Inmate Conant was sprayed with OC spray before being taken to the ground. During inmate witness interviews and Officer Bishop's interview it was found that she sprayed Inmate Conant while he was on the ground. Inmate Conant denied Officer Freeman stepping on his sandals but Officer Freeman acknowledged that he thinks he may have stepped on his sandals accidentally. Inmate Conant states there was [sic] no commands ever given and both officers state otherwise. Also, two of the three inmate witnesses stated Inmate Conant appeared to be unconscious while Inmate Conant and both officers insist he was alert after hitting the ground. It would appear on video that Inmate Conant was unresponsive for several seconds. There also appears to be two knee strikes delivered by Officer Freeman that were not documented in his use of force report.
>
> Consistencies: Both Officers and inmates agree that Inmate Conant was talking loudly and disrespectful[ly] to Officer Freeman. Inmate[s] and Officers state Inmate Conant forcefully pushed off the wall towards Officer Freeman during the handcuffing process.

(*Id*. at PageID# 209.)

Official Neff then examined the use of force. (Doc. No. 39-1, PageID# 209.) With respect to lesser alternatives, Neff found that Freeman and Bishop had first given verbal directives. (*Id*.) With respect to Plaintiff's ability to do harm, Neff found that Plaintiff did

---

[2] Defendants did not provide the video footage in support of the Motion for Summary Judgment.

not comply with Freeman's directives to go to his rack and stop walking toward the inmate restroom. (*Id.*) With respect to Freeman's perception of jeopardy, Neff found that Plaintiff "did push himself off of the wall during the handcuffing process towards Officer Freeman." (*Id.*) Finally, with respect to Plaintiff's opportunity to do harm, Neff found that Freeman gave Plaintiff an opportunity to harm him by closing the distance between himself and Plaintiff and being so close as to step on his sandals. Neff also reasoned that "[i]f Officer Freeman would have used better IPC skills the situation may have been avoided altogether." (*Id.*)

Based upon his assessment, Neff concluded that Freeman's use of force was justified but not appropriate. (Doc. No. 39-1, PageID# 209-10.) He explained:

> [Plaintiff] is 35 years old and incarcerated for a felonious assault charge. The offender has numerous conduct reports on file. [Plaintiff] was walking away from Officer Freeman while Officer Freeman followed…. I believe if Officer Freeman would have slowed down, and verbally engaged with the inmate more, the incident could have been prevented….
>
> The video does not match with the reports wrote [sic]. There appears to be two knee strikes delivered by Officer Freeman that were not documented in his use of force report and also the fact that the [Plaintiff] appears to be non-responsive during the time of these knee strikes.
>
> ****
>
> Officer Freeman admitted to utilizing a "hip toss" by grabbing the inmate around the waist and bringing [Plaintiff] over top of Officer Freeman and taking him to the ground. The possibility of serious inmate or staff injury utilizing this type of a "take down" should be noted. I agree that force could be utilized in the scenario of [Plaintiff] pushing off the wall but the force that was used was unnecessary (hip toss to the ground head first). Furthermore, Officer Bishop states that she utilized OC spray after [Plaintiff] was already placed on the ground which is different from what her original report read. In closing I will say the entire UOF incident could have been avoided if better judgment was used by the officers….

> In conclusion … this investigator finds the force used by Officer Freeman was justified but unnecessary because of the unorthodox take down technique. The force Officer Freeman exerted does not appear necessary under the circumstances.

(Doc. No. 39-1, PageID# 210.) Warden Forshey concurred with Official Neff's findings, issued a written reprimand to Freeman and provided corrective counseling to Bishop. (*Id*. at PageID# 211.) The Warden reprimanded Freeman for "exercis[ing] poor judgment by using force on inmate Conant instead of using de-escalation techniques." (*Id*. at PageID# 234.) The Warden counseled Bishop for "chang[ing] [her] story from the initial use of force report to when [she was] questioned during the investigation." (*Id*. at PageID# 235.)

## II. ANALYSIS OF DEFENDANTS' ASSERTED DEFENSES

Before addressing Plaintiff's excessive force claims, the undersigned will consider several defenses that Defendants raised and argued in their Motion.

### A. *Heck* Favorable Termination Rule

Defendants first argue that Plaintiff's excessive force claims are barred by the so-called *Heck* favorable termination rule. (Doc. No. 39, PageID# 189-92.) The *Heck* rule bars a plaintiff from asserting Section 1983 claims that "necessarily imply the invalidity of his conviction and confinement until such time that the conviction is reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus." *Lanier v. Bryant*, 332 F.3d 999, 1005-06 (6th Cir. 2003) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). However, if a plaintiff's claims, "even if successful, will not demonstrate the

invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Heck*, 512 U.S. 487.

Defendants contend that the *Heck* rule bars Section 1983 claims that, if successful, will necessarily imply the invalidity of disciplinary proceedings. (Doc. No. 39, PageID# 190 (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)). Because the RIB found Plaintiff to be guilty of misconduct related to the March 31, 2021 incident, Defendants argue that *Heck* bars his excessive force claims because a favorable ruling in this lawsuit would necessarily imply the invalidity of the RIB's findings. (*Id.* at PageID# 190-92).

The undersigned disagrees. The Sixth Circuit has explained that the *Heck* rule "applies **only** where a prisoner's Section 1983 challenge 'threatens … his conviction or the duration of his sentence.'" *Peterson v. Johnson*, 714 F.3d 905, 918 (6th Cir. 2013) (emphasis added) (quoting *Muhammed v. Close*, 540 U.S. 749, 751 (2004)). In *Peterson*, the *Heck* rule did not apply because the plaintiff only sought monetary damages on his excessive force claim and did not complain about the loss of any good-time credits (which may shorten a sentence). *Id.* Similarly here, Plaintiff seeks only medical treatment and monetary damages (Doc. No. 12, PageID# 57) which, if awarded, will not "threaten[] … his conviction or the duration of his sentence." *Muhammed*, 540 U.S. at 751. Therefore, the *Heck* rule does not apply. *Peterson*, 714 F.3d at 918; *accord Westley v. Harris*, No. 23-3177, 2024 WL 4111143, 2024 U.S. App. LEXIS 22593, at *17-18 (6th Cir. Sept. 4, 2024) ("Westley did not allege that the disciplinary charges resulted in the loss of good-time credits or otherwise affected his underlying sentence. Thus, the district court incorrectly determined that the *Heck* rule bars this excessive-force claim."); *Meeks*

8

*v. Schofield*, 625 F. App'x 697 (6th Cir. 2015) ("Because Meeks was sentenced only to five days of punitive segregation and a four-dollar fine for the offense and … does not contend that the disciplinary conviction affected the length of his sentence, his retaliation claim does not implicate *Heck*.").

Accordingly, Defendants have not established that they are entitled to summary judgment based upon the *Heck* favorable termination rule.

### B.      PLRA Exhaustion of Administrative Remedies

Next, Defendants argue that Plaintiff's claims must be dismissed without reaching their merits due to Plaintiff's failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Doc. No. 39, PageID# 195-96.)

The PLRA requires all prisoners, including Plaintiff, to exhaust all available institutional remedies before filing suit in federal court. 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion is required before filing "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement is intended to provide "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009).

9

Although "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court," a failure to exhaust administrative remedies is an affirmative defense that Defendants must plead and prove. *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). For Defendants to be awarded summary judgment based upon this defense, the evidence of non-exhaustion must be "so powerful that no reasonable jury would be free to disbelieve it." *Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023). Once Defendants raise and support this defense, the burden of proof shifts to Plaintiff, who must present evidence showing compliance with the PLRA's exhaustion requirement. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Here, Defendants argue that Plaintiff failed to exhaust his legal remedies because "[he] claims he filed informal complaints and grievances but failed to appeal any of the decisions." (Doc. No. 39, PageID# 195.) The only evidence that Defendants point to, however, pertains to an incident that occurred in *2023* and is wholly irrelevant to this case. (*See* Doc. No. 39-3.) Moreover, the evidence in the record suggests that Plaintiff *did* exhaust his administrative remedies: (1) he filed a kite regarding the use of excessive force, (2) an investigation was conducted, (3) the investigator concluded that the use of force was justified but the actual force used was inappropriate, (4) Freeman received a written reprimand, and (5) Bishop received corrective counseling.

In sum, because Defendants have not supported their PLRA exhaustion defense with evidence, they are not entitled to summary judgment on this basis.

### C.    Eleventh Amendment Immunity

Defendants argue that Plaintiff's claims against them in their official capacities (as opposed to their individual capacities) are barred by the Eleventh Amendment to the U.S. Constitution. The undersigned agrees.

The Eleventh Amendment provides States with immunity from federal lawsuits seeking damages, unless that immunity is expressly waived. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). The State of Ohio has not waived its Eleventh Amendment immunity. *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985). Further, the Eleventh Amendment bar extends to actions where the State is not named as a defendant, but the action essentially seeks to recover money from the State. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). For example, claims against an individual State official in his official capacity are actually claims against the State that employs him. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Therefore, actions against State officials in their official capacities for money damages are barred by the Eleventh Amendment. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's official-capacity claims against Defendants be **DISMISSED.**

## III.    ANALYSIS OF PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure permits parties to move for summary judgment on one or more claims or defenses in an action. Fed. R. Civ. P. 56(a).

11

The Court "shall grant summary judgment if the movant shows that there is no ***genuine***

***dispute*** as to any ***material fact*** and the movant is entitled to judgment as a matter of law."

*Id*. (emphasis added). A dispute is "genuine" if "the evidence is such that a reasonable

jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A fact is "material" if its resolution "might affect the outcome

of the suit under the governing law." *Id*.

If a party asserts that a fact cannot be disputed or, conversely, that it is genuinely

disputed, then it must support its assertion with citations to evidentiary materials (e.g.,

depositions, documents, affidavits, declarations, stipulations, admissions or interrogatory

answers). Fed. R. Civ. P. 56(c)(1)(A). A plaintiff's *pro se* status does not exempt him

from his burden to provide such evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482,

485 (6th Cir. 2010). However, "a prisoner's sworn affidavit, standing alone, may create a

genuine dispute of material fact that forecloses summary judgment . . . even if the record

lacks corroborating evidence." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022); *see*

*also Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023) ("[I]f the assertions in

[the plaintiff's] sworn affidavit are true, they would at least create a dispute of fact ….").

The Court is not required, however, to consider portions of affidavits or declarations that

contain either inadmissible evidence or conclusions of law. Fed. R. Civ. P. 56(c)(4).

The party moving for summary judgment bears the initial burden of showing the

absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*,

477 U.S. 317, 325 (1986). The moving party meets this burden when it shows that the

lack of evidence supporting an essential element of the non-moving party's case is so

significant that "no reasonable jury could find for the nonmoving party." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022). However, when asserting qualified immunity at the summary-judgment stage, a defendant is relieved of the threshold burden on that issue, and the plaintiff must instead affirmatively prove that the defendant *is not* subject to qualified immunity. *Fry v. Robinson*, 678 F. App'x 313, 318 (6th Cir. 2017).

If the moving party meets its initial burden, then the non-moving party cannot rest on its pleadings, but instead must point to admissible evidence that creates a genuine issue of material fact on each element of its claims or defenses. *Anderson*, 477 U.S. at 248-50; *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). The non-moving party must show that more than "a mere scintilla of evidence" supports each such element. *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). If the non-moving party does not either properly support its assertions of fact or address the moving party's assertions of fact with admissible evidence, then the Court may consider the moving party's cited evidence to be undisputed. Fed. R. Civ. P. 56(e).

When ruling on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not make credibility judgments or weigh the evidence. *Alsbaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). It also may not substitute its own judgment for that of a jury and decide the case on the merits. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). Instead, the Court's role is to determine "whether the evidence presents a sufficient

disagreement to require submission to a jury" at all, or whether the case "is so one-sided that the moving party must prevail as a matter of law." *Id*. (internal citations omitted).

Although the Court is only required to consider the materials cited by the parties, it may also consider other evidentiary materials in the record. Fed. R. Civ. P. 56(c)(3). But the Court "has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009).

**B.        Standard for Eighth Amendment Excessive Force Claims**

Because Plaintiff is a convicted prisoner, his excessive force claim must be considered under the Eighth Amendment to the U.S. Constitution. *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir. 1995). "The Eighth Amendment prohibits the imposition of 'cruel and unusual punishments' upon prisoners." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting U.S. Const. amend. VIII)). "But not every shove or restraint gives rise to a constitutional violation." *Id*. (quoting *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)). The need to maintain security and discipline may require prison officials to use physical force that would be actionable as an assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d

548 (6th Cir. 2002). Nevertheless, prison officials may not inflict "unnecessary and wanton" pain on prisoners. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component of an Eighth Amendment excessive force claim evaluates "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. The Court must consider: (1) the need for the use of force; (2) the relationship between that need and the type and amount of the force used; (3) the threat reasonably perceived by the official; and (4) the extent of the injury inflicted. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley*, 475 U.S. at 320.

The objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell* 859 F.3d at 580. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9-10). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. At the same time, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4; *see Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

15

C.      Qualified Immunity

The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 58, 664 (2012). The purpose of qualified immunity is to provide governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer*, 468 U.S. 183 (1984); *see Guptill v. City of Chattanooga*, 160 F.4th 768, 781 (6th Cir. 2025) ("The goal is to ensure officers have a fair and clear warning that certain conduct violates the law"). "When properly applied, [it] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations and citation omitted).

To decide whether an official is entitled to qualified immunity, the Court must determine whether the alleged conduct violated a constitutional right and, if so, whether that right was clearly established. *Jones v. Clark Cty.*, 959 F.3d 748, 766 (6th Cir. 2020). The Court may consider these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

A constitutional right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (internal quotations and citation omitted). To determine whether a right is clearly established, this Court "look[s] first to decisions of the Supreme Court,

16

then to" decisions of the Sixth Circuit Court of Appeals, and in limited circumstances the decisions of other federal appellate courts. *Guptill*, 160 F.4th at 781. Clearly established rights must not be defined at a high level of generality. *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotations and citations omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citation omitted) (emphasis in original). "But where actions are so obviously contradicted by the law, then officers may have notice that their conduct violates clearly established law 'even in novel factual circumstances.'" *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

Although qualified immunity is an affirmative defense, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). "The defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority …." *Id*. "Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id*. The Court is required to believe the admissible evidence cited by the plaintiff and draw all justifiable inferences in his favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). The Court must separately consider each defendant's liability and entitlement to qualified immunity. *Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013).

17

### D.     Defendants Bishop and Freeman Are Entitled to Qualified Immunity

Plaintiff asserts Eighth Amendment excessive force claims against Defendants Bishop and Freeman. Both Defendants have invoked the doctrine of qualified immunity as a defense. As noted above, once a defendant invokes and supports this defense, the burden shifts to the plaintiff to prove that the defendant is not entitled to qualified immunity. *Gardenhire*, 205 F.3d at 311.

Here, Defendants met their initial burden of providing evidence that they "acted within the scope of [their] discretionary authority during the incident in question." *Id*. The burden then shifted to Plaintiff to point to evidence and case law that creates a genuine dispute of material fact regarding whether Defendants violated his clearly established rights. *Id*. Because Plaintiff did not respond to Defendants' Motion for Summary Judgment, however, he did not meet this burden. Defendants are therefore entitled to summary judgment based upon qualified immunity. *See Paul v. Whitley Cty.*, No. 24-5142, 2024 WL 4362260, 2024 U.S. App. LEXIS 24661, at *4-5 (6th Cir. Sept. 30. 2024) ("[T]he district correctly found that Paul forfeited the issue of qualified immunity by failing to respond to Philpot's assertion of the defense.") (citing *Doe v. Board of Regents of Univ. of Mich.*, No. 22-2095, 2023 WL 5095799, 2023 U.S. App. LEXIS 20969 (6th Cir. Aug. 9, 2023) (affirming the grant of qualified immunity because the plaintiff "failed to make any argument in the district court that the individual defendants were not protected by qualified immunity" and thus "had forfeited the issue") and *Brown v. U.S.*, 545 F. App'x 435, 437-38 (6th Cir. 2013) (affirming award of summary judgment to defendants based upon qualified immunity where the plaintiff's

"arguments opposing summary judgment lacked the specificity to meet th[e] standard" for overcoming the defense.")).

Accordingly, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 39) be **GRANTED** based upon qualified immunity.

## IV. CONCLUSION

For the reasons stated, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 39) be **GRANTED** in its entirety and that all claims against Defendants Bishop and Freeman be **DISMISSED WITH PREJUDICE.**

**IT IS SO RECOMMENDED**.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

Procedure on Objections

If any party objects to this Report and Recommendation ("Report"), that party may, within fourteen (14) days of the date that this Report was filed, file and serve written objections to specific findings or recommendations along with supporting authority for the objection(s). Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. A District Judge will then make a *de novo* determination of the portions of the report, findings, or recommendations to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, this Court's findings or recommendations, may receive

19

further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are advised that a failure to object to the Report will result in a waiver of a party's right (1) to have the District Judge review the Report *de novo* and (2) to appeal a decision of the District Court adopting the Report. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).